IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KAREN D. BURKS,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ]   2:08-CV-02440-UNAS-KOB |
| | ] |
| **JEFFERSON COUNTY COMMISSION,** | ] |
| et al., | ] |
| | ] |
| **Defendant.** | ] |

**MEMORANDUM OPINION**

This matter comes before the court on the Motion to Dismiss (doc. 7) filed on behalf of Defendant Daniel J. Weinrib, whom Plaintiff sues in his individual capacity pursuant to 42 U.S.C. § 1981, by and through § 1983.  In her complaint Plaintiff Karen Burks claims that the Defendant Jefferson County Commission and Defendant Weinrib discriminated against her on the basis of her race in treating her differently than white employees, and retaliated against her for engaging in protected activity.  Defendant Weinrib asserts that he should be dismissed from the case based on qualified immunity.  The Plaintiff responded to Defendant Weinrib's motion (doc. 10), and Defendant Weinrib replied (doc. 11).  For the reasons stated below, the court finds that the motion is due to be DENIED.  However, the court *sua sponte* DISMISSES the complaint against Defendant Weinrib for failure to meet the heightened pleading standard in § 1983 cases against an individual.  Further, the court GRANTS the Plaintiff leave to file an amended complaint within twenty days of this Order.

Factual Allegations

At the motion to dismiss stage, the allegations of the complaint must be taken as true. *Lotierno v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Defendant Weinrib was elected Tax Assessor and took office in January 2003. Plaintiff Burks began work in August 2003 as a clerk and assistant to Defendant Weinrib. Plaintiff Burks is black and Defendant Weinrib is white. Defendant Weinrib instituted the practice of flextime for hourly and salaried employees. Plaintiff Burks did payroll for the Tax Assessor's Office.

At some point, the "Kronos System" was implemented to record hours that employees worked. Under that system, hourly employees swiped their badges to record the hours they worked. Salaried employees did not have to swipe their cards, and the Kronos System reflected that all salaried employees worked 8:00 a.m. to 5:00 p.m. with an hour off for lunch, five days a week, even if the employee worked ten hours a day on a four-day-a-week flexible schedule.

In February of 2007, Defendant Weinrib asked Plaintiff Burks to start changing the hours of hourly employees who worked ten hours a day, four days a week, to reflect that the employee had worked eight hours a day for five days a week. Plaintiff Burks refused. Instead, Plaintiff Burks changed her time on Kronos and that of other salaried employees to reflect the time they actually worked.

The complaint outlines activities of white employees that did not accurately reflect the hours they actually worked with the knowledge of "Mr. Weinberg," apparently meaning Mr. Weinrib.

In August 2004, Plaintiff Burks requested the opportunity to attend a Tax Assessors' Conference. "Her requested was denied" by some unnamed person. However, Defendant

2

Weinrib took four white employees to the conference, including Plaintiff's assistant.

On November 28, 2006, Plaintiff applied for Granted Leave Without Pay. Her request "was denied" by some unnamed person. She "was required" by some unknown person to write up a summary of why she was off work, although white employees had been granted such leave without any written summary.

According to the complaint, Plaintiff Burks complained to Human Resources about Defendant Weinrib "on three separate occasions." She then only references a complaint in the spring of 2005 that Defendant Weinrib "had sniffed her with his nose on at least three occasions."

The complaint alleges that Weinrib "would also wink at her," and that he asked if he could come to her home "when he knew her husband was away." On March 1, 2007, Defendant Weinrib asked how her breast biopsy had gone.

Apparently, on that same day, Weinrib accused Burks of falsifying payroll, placed her on administrative leave, demanded her keys, and had her escorted from the building.

In Count One, Plaintiff asserts that the Defendants Jefferson County Commission and Daniel Weinrib intentionally discriminated against her on the basis of race in violation of § 1981, and that Defendants acted with malice or reckless indifference to the rights of Plaintiff.

In Count Two, Plaintiff alleges that the Defendants intentionally and wrongfully retaliated against the Plaintiff because she had engaged in protected activity in violation of § 1981.

Standard of Review

In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all

factual allegations in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).  To succeed on a motion to dismiss under Rule 12(b)(6), therefore, a defendant must demonstrate that the plaintiff has failed to give sufficient notice of a proper claim and the grounds upon which that claim rests.

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.  Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563.  "[S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required elements.  *Id.* at 556.

While Fed. R. Civ. P. 8(a) embraces notice pleading, the Eleventh Circuit requires a heightened pleading standard in § 1983 actions against individuals who raise qualified immunity as a defense.  *See Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).  Thus, in a § 1983 action against an individual, the complaint must provide enough factual detail to allow the court to determine whether the "allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Amnesty Int'l v. Battle*, 559 F.3d 1170, 1179 (11th Cir. 2009) [quoting *Olandeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992) (overruled by *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)

4

as to its heightened pleading requirements in actions against entities that <u>cannot</u> raise qualified immunity as a defense) and stating that the Eleventh Circuit's heightened pleading requirement still applies when individual defendants seek qualified immunity]. The complaint must also be sufficiently clear as to which defendant did what allegedly wrongful acts. *See GJR Invs., Inc. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998) (requiring that a Section 1983 plaintiff allege facts with specificity so that the court could determine when a particular defendant's actions violated a clearly established right); *Edwards v. Ala. Dept. Of Corrections*, 81 F.Supp. 2d 1242, 1252 (M.D. Ala. 2000) (stating that 1983 plaintiffs must come forward with specific facts demonstrating that "each defendant" has violated a clearly established constitutional right). If the allegations of the complaint are vague and conclusory, the court should dismiss it. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

Qualified Immunity Standard

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id.* (citing *GJR Invs., Inc.*, 132 F.3d at 1370).

To receive the benefit of qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Government officials act within the scope of their discretionary authority if "the actions were (1) 'undertaken pursuant to the performance of [their] duties' and (2) 'within the scope of [their] authority.'" *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1998)).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The Supreme Court has articulated a two-part test to determine whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must ask this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, "[i]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* (citing *Saucier*, 533 U.S. at 201).

In this case, Plaintiff asserts that the Defendants discriminated against her because of her race and retaliated against her.

> "It is beyond doubt" that there is a federal equal protection right to
> be free from racial discrimination, that this right is clearly
> established, and that it extends into the employment context.
> *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir.
> 1991). "[A] plaintiff must show a purpose or intent to discriminate

>    in proving an equal protection violation based on racial
>    discrimination." *Id*. at 1479 n.8.

*Lawson v. Curry*, 244 Fed. Appx. 986, 988 (11th Cir. 2007).

Defendant's Challenge and Plaintiff's Response

Defendant Weinrib challenges the sufficiency of the Plaintiff's complaint to defeat his qualified immunity defense. In response, Plaintiff asserts for the first time that the "constitutional right at issue in Ms. Burks' § 1983 claim is the right to equal protection under the law as secured by the Fourteenth Amendment to the Constitution." The court agrees that the "federal equal protection right to be free from racial discrimination . . . extends to the employment context. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991)." Plaintiff's Response (doc. 10) at ¶ 4. However, nowhere <u>in her complaint</u> does the Plaintiff identify the constitutional right giving rise to her § 1983 action.

Further, although the complaint contains details about Plaintiff's employment in the Tax Assessor's office, she drafted many of her allegations in the passive voice, making it impossible for the court to glean who the actor was. For example, the Complaint ¶ 66, asserts that the Plaintiff's request to attend a conference "was denied." The court – and the Defendant – cannot know from such an allegation whether Plaintiff contends that Defendant Weinrib denied her request, thus treating her differently than the white employees, or whether someone else denied her request. The court finds the same vagueness in other allegations in the complaint.

Likewise, the conclusory assertions in Counts One and Two are not saved by merely incorporating "each and every allegation" of the complaint. Specifically, as to Count Two, the complaint is vague as to which actions were taken and by whom in retaliation for engaging in

protected activity – presumably the complaints Plaintiff made to Human Resources about Mr. Weinrib "on three separate occasions" (Complaint ¶ 84) when only one occasion in the Spring of 2005 is specified (¶ 85).  Further, the complaint lists what could be viewed as sex discrimination, instead of racial discrimination.  If the complaint does not clearly articulate the Plaintiff's claims, neither the court nor the defendant should have to guess as to the basis for the complaint.

      Although Defendant Weinrib did not specifically challenge the complaint under the heightened pleading standard, the court *sua sponte* finds the complaint inadequate.  Neither the court nor the Defendants should be required to speculate as to the constitutional basis of Plaintiff's § 1981 claims; neither should we have to guess whether the person who denied various requests by the Plaintiff, about which she complains, was Defendant Weinrib or someone else.  Thus the complaint should be dismissed, but the Plaintiff should be given an opportunity to file an amended complaint that meets the heightened pleading standard set by the Eleventh Circuit.  Specifically, the amended complaint should clearly articulate what alleged rights were violated, who allegedly violated them, and which actions allegedly violated those rights.  *See Amnesty Int'l*, 559 F.3d at 1179-80.

      The basis of Defendant Weinrib's qualified immunity defense appears to be that his conduct violated "no clearly established statutory or constitutional rights."  See Motion to Dismiss (doc. 7) and Defendant's Reply (doc. 11).  As previously noted, the court cannot presume from the complaint which alleged actions Plaintiff attributes to Defendant Weinrib.  However, if Plaintiff is able to plead with the required heightened particularity that Defendant Weinrib's alleged unequal treatment constitutes discrimination in the terms and conditions of her employment and/or retaliation for engaging in protected activity, the Defendant may not be able

8

to hide behind qualified immunity, at least at this stage.  The law has long been settled that the federal equal protection right to be free from racial discrimination and extends to the employment context.  *Lawson v. Curry*, 244 Fed. App'x. 986, 988 (11th Cir. 2007) (*citing Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991)).  Therefore, the court finds the Defendant's motion to dismiss is MOOT based on the court's dismissal of the complaint.  The Defendant may refile the motion to dismiss IF appropriate upon the Plaintiff's filing of an amended complaint.

In summary, the court on its own motion dismisses the complaint against Defendant Weinrib because it fails to meet the heightened pleading requirement for claims against individuals under § 1983.  The Plaintiff may file an amended complaint within **twenty days** of the Order filed simultaneously with this Memorandum Opinion.  The Defendant's motion is MOOT.

DONE and ORDERED this 23rd day of April 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE